Estate of Sarah D. Lacy, deceased.   Appeal of the Commonwealth of Pennsylvania.

Argued Jan. 24, 1898.   Appeal, No. 438, Jan. T., 1897, by commonwealth of Pennsylvania, from decree of O. C. Phila. Co., April Term, 1897, No. 527, dismissing exceptions to adjudication.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

At the audit of the estate the tax was awarded by ASHMAN, J., in his adjudication reported in 6 Dist. Rep. 499, to which adjudication exceptions were filed by the accountant and sustained by the court in banc.

The adjudication is as follows:

ASHMAN, J., July 24, 1897:

It seems just to the parties in interest that a reason should be given, in the absence of any binding decision, for deducting from this estate the tax imposed by the act of May 12, 1897. The matter has been delayed in the hope that the questions involved would be argued by counsel, but that hope has been disappointed, and what follows is, in a crude shape, the judgment of the auditing judge as to the validity of the statute. The act touches a function of the state, respecting which, within the limits set by the constitution, the legislature is omnipotent. To use the language of a high authority, "The power of taxation is an essential and inherent attribute of sovereignty:" Cooley's Con. Lim. 479.   The act is not free from incongrui

ties; very few statutes of its length are.  Its last section de-clares that it shall be known as the Direct Inheritance Law, but its first section provides that all personal property passing by will or the intestate laws to any bodies corporate or politic, in trust or otherwise, or by reason whereof any such body should become beneficially entitled to any property, shall be subject to the tax.  The legislature has conferred many and large privi-leges upon corporations, but it has never until now recognized among those gifts the miraculous power, on the part of an arti-ficial body, of acquiring property as a lineal descendant.  This, however, is a technical criticism.  The actual meaning of the title of the act is given without ambiguity in the last section, where what is styled the direct inheritance tax is contrasted with the collateral inheritance tax, and the intention is ex-pressly declared to be to impose the former tax upon all estates or parts of estates not subject to the latter tax.  The last sec-tion discloses another anomaly by asserting an intent to impose a tax on all estates not subject to the acts relating to the col-lateral inheritance tax, which include real as well as personal estate, whereas the actual and previously declared intent was to tax personal property only.  Discrepancies like these, where the legislative purpose is clear, will not invalidate a statute. "If any part of a statute be intricate, obscure or doubtful, the proper way to discover the intent is to consider the other parts of the act; for the words and meaning of one part of a statute frequently lead to the sense of another, and in the construction of one part of a statute every other part ought to be taken into consideration:" Dwarris on Stat. 188.  That the act was in-tended to apply only to personalty is transparent.  Section 1 limits its operation to personal property; sections 2, 6 and 7 re-fer only to personal property; sections 3, 4, 5, and 8 refer to legacies, and real estate is not mentioned in the act.  When, therefore, the final section declares the intention to impose the tax on all estates not subject to collateral inheritance tax, it must mean all estates of personalty and not of realty, because the former alone are the subject of its preceding provi-sions, and because they alone are indicated by the machinery which in other sections of the act has been contrived for the collection of the tax.  The rule which in a case like this is to be applied is a rule of common sense rather than of strict law.

To use again the language of Mr. Dwarris: "As the construction is to be made upon the complete statute and not upon disjointed parts of it, consequently all its parts are to be compared, considered and construed with reference to each other.    Hence, general words may be restrained and clauses may be controlled by clauses:" Dwarris on Stat. 194.

The features of the act which call for special attention are: (1) The proviso to the enactment by section 1 of a tax upon all personal property passing by will or intestacy to others than collaterals, that property to the value of $5,000 shall be exempt from the tax in all estates; (2) the provision that so much of the estates of persons theretofore deceased as has not been actually distributed before the passage of the act shall be liable to the tax; and (3) the conditions as to the payment of the tax. Starting with the first, does the $5,000 exemption violate that article (9) of the constitution which prescribes that all taxes shall be uniform upon the same class of subjects, and all exemptions of property other than that used for governmental and charitable purposes, etc., shall be void ?   The question is one which concerns the form rather than the substance of the enactment.   Uniformity in the taxation of estates requires that all estates of the same character shall be taxed in the same ratio; and it permits one half or any other fraction of all estates of that character to be taxed.   The result in the last two cases would be to exempt the remaining fraction of each estate from the burden which was imposed upon the other portion.   What more or less than this will be accomplished by this statute? Whatever may be said of its phraseology, its meaning is clear: to levy a tax upon that part of the personal estates of all decedents in excess of a valuation of $5,000, where such estates are not liable to the collateral inheritance tax.   The proposition now sought to be established may be best illustrated by contrasting it with another.   The constitution of Ohio (article 2, section 26) ordains that "all laws of a general nature shall have a uniform operation throughout the state."   By the act of April 20, 1894, imposing a direct inheritance tax, the property of a decedent which should exceed $20,000 in value was taxed one per cent of its entire value; so that while an estate of $20,000 was exempted from all burden, an estate which was $1.00 in excess of that value was taxed $200.   In State v. Ferris, 53 Ohio, 314, the act was

held unconstitutional for doing the reverse of what the Pennsylvania statute has done; that is, for taxing the entire estate where it exceeds the given sum, instead of taxing only the excess above the sum. The court says: "The right to receive the first $20,000 of an estate not exceeding that sum is protected from taxation, while the right to receive the first $20,000 of an estate exceeding that sum is taxed the sum of $200. This is not equal taxation."

For another reason, the tax is not comprehended within the terms of the article of the constitution, declaring void all laws exempting from taxation "property other than public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, and institutions of purely public charity." It is not a tax upon property at all, but upon the right of succession to property, and it belongs to a province wherein it is difficult to assign any limit to the lawmaking power. The right by which an owner may project his title to property beyond the period of his own life, and by which, in virtue of kinship, an heir may come into the enjoyment of his ancestor's estate, is not a natural, but a statutory right. Respecting the bestowal or the withholding of that right, the constitution has set no bounds whatever to legislative action, and it is hardly possible that it could do so. The legislature may at its own volition recognize new classes of inheritable blood, and it may vary the inheritable capacity of existing classes, and it may impose the conditions upon which inheritors shall take. These conditions are always based upon a standard of property values, but they are attached, nevertheless, to the right and not to the property. The only apparent limitation to the lawmaking prerogative in this respect is found in the general principle that it can raise a revenue only for public purposes; and no scheme of taxation would be lawful which should transcend those purposes. The distinction may be subtle, but it is plain, between a license to succeed to the possession of property and a tribute exacted from the property itself; it is precisely the distinction which obtains between the franchise of a corporation and its buildings and stock. For reasons of public policy, the legislature may lawfully exempt whole classes of lineal inheritors from the payment of tribute, and in so doing it has regard to the instinct which prompted the an-

cestor to provide for his offspring. So it may with equal legality tax whole classes whose remoteness in blood from the decedent precludes the thought that he accumulated his estate with a view to their benefit. Laws imposing a tax upon the right of collateral kindred to succession are in force in most of the states, and their validity in operating only upon that class of persons has never, it is believed, until this day at least, been questioned. In Pennsylvania, the law exempts from the tax all estates valued at less than $250, coming to distributees as collaterals. Beneficently intended as that provision undoubtedly was, it would be within the inhibition of the constitution against all exemptions of property not expressly excepted by that instrument, if the tax was a tax upon property and not upon the right of succession to property. So that, even conceding the accuracy of the theory that the act of 1897 exempts estates of $5,000 and under from liability to the tax which it imposes upon larger estates, it is, nevertheless, true that its provisions in this regard are not an exemption of property from taxation within the terms of the constitution. It is not worth while to cite many authorities in support of this position. In Brettun v. Fox, 100 Mass. 234, it is said: "The power to dispose of property by will is neither a natural nor a constitutional right, but depends wholly upon statute, and may be conferred, taken away or limited and regulated, in whole or in part, by the legislature." In Minot v. Winthrop, 162 Mass. 118, the court says: "Taxes on legacies and inheritances, or on succession in any form to property, on the death of the owner, have generally been considered not as taxes upon property, but as excises upon the privilege of taking or transmitting property in this way." The same point was made in Scholey v. Rew, 23 Wall. 331.

The fate of this estate rests mainly, however, upon the effect to be given to the section of the act which deals with estates of decedents who died before the act was originated, and with the provision of section 2, which allows upon the tax, when paid within three months after the death of the decedent, a discount, and imposes, when the tax is not paid at the end of a year from the death, interest at six per cent for the year, and at twelve per cent per annum for any period beyond it. If section 2 applies to the undistributed estates mentioned in the former

section, then such estates cannot share in the benefit of the discount, and may be subjected to a penalty which might in some instances work confiscation. The present decedent died in 1896, and her estate, which is still undistributed, is subject to the tax; but the rebate allowed for payment of the tax within three months after the death is an impossible privilege, because the time had already expired when the act began to operate. To make the act apply, however, to such a case, it would be necessary to write words into this clause which the framers of the statute never intended to write, and which, if inserted, would have convicted the authors of imbecility. The section does not say that a discount will be allowed or a penalty inflicted upon estates of decedents who died before its passage. It would have been well, on the score of clearness of expression, if the section had been made in terms to apply only to estates of future decedents; but the draftsman of the act may have reasoned with plausibility that it would be mere verbiage to say that future decedents alone were intended, when it was manifest from the language of the section that past decedents could not have been; in other words, when one of the conditions set out in the section was impossible and the others were unjust and absurd, if they referred to estates whose owners died before May, 1897. How could a tax, which was not imposed until 1897 be paid within three months of the death of a taxable party which took place in 1895. Nor is it credible that the legislature meant in such a case to impose a penalty in the shape of interest at twelve per cent per annum for two years' delay in paying a tax which had no existence and hence could not have been paid during those years. It seems useless to labor so palpable a point. Says Chancellor KENT, in speaking of statutory construction: " The real intention, when accurately ascertained, will always prevail over the literal sense of terms; . . . . and the reason and intention of the lawgiver will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction and absurdity: " 1 Kent, Com. 462. To hold that because the 1st section of the act of May, 1897, embraced the estates both of past and future decedents, while the 2d section imposed penalties for delay and a discount for prompt payment without expressly excluding the former class from their operation, therefore those penalties and that discount applied

to both classes, is to impute to the act the "palpable injustice, contradiction and absurdity" of which Chancellor KENT complains.   Under the section as it is proposed to be read, the estates of those whose deaths antedated the act became liable to the tax at and from the date of the act.   For any delay in its payment after that time interest will be demandable as upon an ordinary debt.

The remaining, and, so far as this estate is concerned, perhaps the most important question, is opened by the proviso in section 1: "That so much of the estates of persons heretofore deceased as has not been actually distributed and paid to persons entitled thereto prior to the passage of this act shall be liable to the tax imposed by this law as well as the estates of persons who die hereafter."   Conceding everything to the literal constructionist, this is retroactive legislation, but a retroactive law which is not expressly forbidden by the constitution (and there is no such constitutional prohibition in Pennsylvania except as to ex post facto laws and laws impairing the obligation of contracts) may be valid.   The cases are collected and the point is discussed by Mr. Cooley in his chapter on retrospective laws: Cooley's Con. Lim. 369, etc.   It is conceded that a retroactive law cannot be permitted to infringe upon rights which were vested before it came into existence.   A statute may enact that all deeds to be valid must have the signatures of three attesting witnesses, but it may not declare that deeds which were executed before its passage without that formality shall be void, because that provision would destroy the vested rights of many landowners who hold title under such deeds.   But what vested right can a man be said to have in anything, not expressly exempted by statute, which may not be the subject of taxation?   The right of succession to estates aggregating millions of dollars in value, whose owners died before the passage of this act, is vested in persons many of whom will not come into possession of their interests for years to come. What superior equity have they over claimants to the estates of later decedents whose interests may fall into possession at the same time with their own?   Or will such an equity accrue to them because of the accident that other persons interested with them in the same estates have received their distributive shares?   Short's Estate, 16 Pa. 63, was the case of a person

whose estate at the time of his death was not subject to taxation because it was not within the state, and yet was made subject by the retroactive force of a subsequent statute. In deciding the statute to be constitutional, GIBSON, C. J., said: "More pointed words to make the act retrospective as well as prospective could not have been chosen; and it will scarcely be said the legislature had not power to make it so, at least as to assets remaining in the hands of the executor or administrator. No clause of the constitution forbids it to extend a tax already laid or to tax assets not taxed before; and in establishing its peculiar interpretation it has only done indirectly what it was competent to do directly. The argument has been that we ought not to give the act a retroactive effect unless we are forced to do so by the stringency of its words. But certainly no injustice is done by increasing a tax to meet an increase of the public burden." What was there said of the constitution as it then stood, is equally applicable to the constitution of 1874. The case has never been overruled; on the contrary, while the exact matter now under discussion was not in issue, the case was affirmed without qualification by STERRETT, J., in Orcutt's Appeal, 97 Pa. 179. Certainly the vested rights of the legatees in that instance, whose shares when they vested were free of taxation, were at least as sacred as the rights of the distributees in this estate. But a reason stronger than it was possible to advance in that case for the statute then under consideration exists in favor of the present legislation, in virtue of which the act of 1897 can only by a sort of misnomer be styled retroactive at all. The reason is this: the act of March 11, 1850, which was the subject of Chief Justice GIBSON's opinion, drew no line between interests which had come into the actual possession of their owners before its passage and those which accrued thereafter, and as to the former was clearly retrospective; the act of May 12, 1897, applies only to interests which shall fall into possession from and after its date, and of necessity operates prospectively, and only prospectively, throughout. It may be objected, finally, to the provision under review that the imposition of the tax upon those distributees only of estates of decedents dying before the act who have not been paid their shares, is not uniform taxation within the meaning of the constitution. The answer seems to be that the legislature may in

its absolute discretion create new classes as the objects of taxation, and may determine the composition of those classes by purely arbitrary distinctions. It may tax estates in possession or estates in expectancy, or it may tax fractional interests in those estates. It may group into classes persons as well as things. It may even tax subdivisions of classes, selecting, for instance, out of the large family of brokers only those who deal in real estate: Pittsburg v. Coyle, 165 Pa. 61. It may impose a tax upon all persons who have any property whatever, as distinguished from paupers who are a charge upon the public purse and are unable to pay. So it may tax those whose right of succession to a decedent's estate is valuable because it entitles them to receive a share of that estate, although it leaves untaxed others whose right of succession is worthless, because its benefits have been already exhausted. The argument upon which the objection is founded is, of course, not that the right of succession cannot be taxed in 1897 because it accrued in 1896 and was then free from taxation. Such an argument would ignore the fact that the right still existed in 1897, and, like any other taxable right, could still be assessed by the taxing power. But the argument is that, under that right, the person who received his share in 1896 is exempt from the burden which is placed upon the person whose share is still unpaid. The difference between these individuals, however, is simply this: that the one is vested with a right which has a present value, and the other with a right which has none. As between the two, government selects for taxation the owner of value. The whole effect of this act is to enroll in one class all persons (not collateral relatives of decedents) whose inheritances are yet to vest in possession, without regard to the time at which the right to inherit originated. The only prerequisite to the constitutional exercise of this power of classification is that the tax shall be uniform as to its subject-matter within the class. The legislature possessed the right before the present constitution was adopted, and that its authority in this respect was not taken away by that instrument was expressly decided in Roup's Case, 81* Pa. 211. The question of legality is not to be determined by any considerations of the possible hardships, which in some instances may result from the operation of the act. The language of Judge COOLEY is here instructive. He says: "It is

not essential to the validity of taxation that it be levied according to the rules of abstract justice. . . . Absolute equality and strict justice are unattainable in tax proceedings. The legislature must be left to decide for itself how nearly it is possible to approximate so desirable a result. It must happen under any tax law that some property will be taxed twice, while other property will escape taxation altogether:" Cooley's Con. Lim. 513.

The objection may still be urged that within the class contemplated by the act, the discount and the penalty are incident to estates held by some owners, while they do not affect others; and that this result is transgressive of the organic law which requires uniformity of taxation in the same subject-matter. The effect of this conflict, if it shall be found to exist with the constitution, will be to annul those portions of the act which relate to such discount and penalty. But the vitality of an act is not destroyed by the circumstance that in one of its members it offends against the constitution, unless indeed that member is essential to the whole structure of the act. In this instance, the integrity of the tax itself will be preserved, however faulty may be the method for its enforcement; and only the discount and the penalty which are of partial operation will be abrogated.

The rule of law by which this statute is to be interpreted has been said to possess the singular advantage of not being opposed even by a dictum. The eminent jurist who used this emphatic phrase asserted the rule to be that "a court can declare an act of assembly void only when it violates the constitution clearly, palpably, plainly, and in such manner as to leave no doubt or hesitation on the mind:" Per BLACK, C. J., in Sharpless v. Philadelphia, 21 Pa. 164.

In connection with the question of hardship it may be well to remark that, compared with the collateral inheritance tax, the burden placed by this act upon the taxpayer is far less than even the lower rate of the tax would at first sight suggest. In an estate, for example, of $10,000 going to four collaterals, the entire fund is taxed at five per cent and the share of tax assessed against each distributee is $125. In an estate of · the same amount going to four lineal descendants only $5,000 is taxed, which at two per cent renders each distributee liable to but $25.00.

VOL. CXCI—5

The auditing judge thinks that the act of May 12, 1897, is constitutional.

*Francis A. Osbourn, John C. Grady, John P. Elkin* and *Henry C. McCormick*, attorney general, for appellant.

*Edward Brooks, Jr., George Q. Horwitz* and *Frederick J. Geiger*, for appellees.

OPINION BY Mr. CHIEF JUSTICE STERRETT, April 24, 1899:

This and three other cases were argued at last term with Commonwealth's Appeal in Estate of Juan F. Portuondo, No. 440, January term, 1897, involving substantially the same questions, in which an opinion has just been filed, declaring the Act of May 12, 1897, P. L. 56, unconstitutional, etc., ante, p. 28.

For reasons given in that opinion the decree of the court below must be sustained.

Decree affirmed and appeal dismissed at appellant's costs.